## United States v. Edgar.

*(Circuit Court, E. D. Missouri, E. D. January 29, 1891.)*

1. CONTRACT FOR ALIEN LABOR.
    The offense described in sections 1 and 3 of the act of February 26, 1885, (23 U. S. St. 332,) consists in prepaying, or otherwise assisting or encouraging the importation or migration of an alien, knowing such alien to be at the time under contract to perform labor or service in the United States. Following *U. S. v. Craig*, 28 Fed. Rep. 799.

2. SAME—MEANING OF WORDS "CONTRACT" OR "AGREEMENT."
    The words "contract" or "agreement," used in the statute, mean an enforceable contract, express or implied.

3. SAME—CONTRACT—EVIDENCE OF.
    . A letter was written by an alien in England to a person in the United States, saying that the writer had heard that the party addressed was in want of men to do a certain kind of work, and, if convenient to send passes, himself and another alien would "come out," but contained no express promise to do work in consideration of receiving passes. To this letter a third party, to whom the same was handed, replied: "I have this day bought two tickets for you; * * * take this letter to R. S. & Co., * * * and get tickets. * * * We can give you steady work. * * * Tickets will not be good after July 18th." The letters being the only evidence of a contract to perform labor or service in the United States, existing when the transportation was prepaid, *held*, that they were insufficient to establish a contract existing at that date.

---

This is a suit under section 3, Act Feb. 26, 1885, (23 U. S. St. 333,) to recover a penalty for prepaying the transportation of two aliens from Bristol, England, to the United States, such aliens being at the time, as it is claimed, under a contract to perform labor for the defendant in the United States. The petition, after alleging the prepayment of the transportation, while the aliens were under a contract to perform labor in the United States, further avers that "said contract and agreement between defendant and said aliens was entered into between them by letters forwarded and delivered by mail, which letters are as follows:

"No. 16 AIKEN ST., BARTON HILL, BRISTOL, April 11, 1890.

' *From Mr. I. Boyce to Mr. Gray, the manager*—DEAR SIR: I have heard that you are in want of men to work on the spilter furnaces I and one of my fellow workmen would like to come out hear as the workshear is very slack if it would be convenient for you to send us a pass each we would

come out as soon as poseble we have both worked in the spelter works for many years would you oblige us by writing back to let us now and oblige

"I. BOYCE,

"No 16 Aiken Street, Barton Hill, Bristol, England.
"The name of my fellow workman Fred. Dorosalski."

"S. C. EDGAR,

"*Lessee Glendale Zinc Works, Manufacturers and Refiners of Spelter,*
"SOUTH ST. LOUIS, 1st July, 1890.

"*I. Boyse, No.* 16 *Aiken Street, Barton Hill, Bristol, England—*DEAR SIR: Your letter of April 11th has just been handed me, and I have this day bought two tickets for you and Fred Dorosalski from St. Louis agent of American line, and all you have to do is to take this letter to Richardson, Spence & Co., No. 17 Water street, Liverpool, and get tickets through to St. Louis. We can give you steady work, and have places for about 6 or 8 more smelters, if they want to come. I run 14 Belgium furnaces. Tickets will not be good after July 18th.           Yours, truly,           S. C. EDGAR."

It is conceded by the government that the letters constitute the only evidence of a contract that it can produce. It is further averred, in substance, that on receipt of the last of the above letters, Boyce and Dorosalski presented the same to Richardson, Spence & Co., at Liverpool, England, and received from that firm tickets for their passage thence to St. Louis, Mo., which had been theretofore paid for by the defendant, and that the aliens thereupon took passage on a vessel from England to Philadelphia, intending to come to St. Louis and perform labor for the defendant, but that, on the arrival of the vessel at Philadelphia, the immigrant inspector at said port, on an examination of the circumstances under which they had come to the United States, refused to permit them to land, and ordered them to be sent back to England. To the petition alleging the above facts the defendant demurs.

*Geo. D. Reynolds,* U. S. Atty.

*F. N. Judson,* for defendant.

THAYER, J., (*after stating the facts as above.*) Two questions have been argued at the bar: *First,* whether Boyce or Dorosalski, as shown by the correspondence, were under any such "contract or agreement, parol or special, express or implied, to perform labor or service in the United States," as renders the defendant liable to a penalty for prepaying their transportation; and, *second,* whether the fact that Boyce and Dorosalski did not actually land, but were sent back to England, absolves the defendant from liability.

I find it unnecessary to decide the last question. It has been held, according to the plain import of the language employed, that the wrongful act described in the first section of the statute under consideration consists in prepaying the transportation, or otherwise assisting or encouraging the importation, or migration, of an alien, when such alien is known to be under a contract or agreement to perform labor or service in the United States. *U. S.* v. *Craig,* 28 Fed. Rep. 795; *U. S.* v. *Borneman,* 41 Fed. Rep. 751. It follows that it is not unlawful "to prepay the transportation" of an alien, unless at the time of such prepayment the

alien is then "under contract or agreement to perform labor or service in the United States." Whether Boyce and Dorosalski were under contract or agreement to perform labor in the United States when their transportation was prepaid, must be determined with reference to what had been done towards entering into a contract up to that time, and at the time their passage was prepaid there had simply been an interchange of letters of the tenor above stated. A contract that is not enforceable for the reason that it lacks some of the elements of a valid agreement, such as "mutual assent," or a consideration,. is not a contract. Hence the words "contract or agreement," as used in the statute, must be held to mean a complete contract; that is to say, an agreement entered into for a sufficient consideration to perform some kind of labor or service, to the terms of which the parties have mutually assented. If an "implied contract" is counted upon, a state of facts must be alleged from which a court or jury might lawfully draw the inference, as a matter of fact, that the alien had agreed to perform labor or service of some kind, and that some other person had agreed to accept such services.

In my judgment the letters do not constitute an "express contract," and, taken in connection with what had been done up to the time the transportation was paid, are insufficient to establish an "implied contract." The distinct proposition conveyed by the first letter is merely a proposition to "come out," which may be interpreted "come to the United States, if the party addressed [Mr. Gray] would send passes." No promise was made, however, to do work of any kind, or for any person, in consideration of receiving such passes. If the aliens had in fact landed in the United States, and had declined to work for the defendant, the latter could not, in my judgment, have maintained an action against them as for breach of a contract to perform labor or service for him. The second letter is subject to the same criticism. The defendant did not say: "If you will come to the United States, we will give you steady work." The language is: "We can give you steady work," etc. It is reasonable to infer, both from the language employed and from the situation of the parties, that the defendant was unwilling, and did not intend, to enter into a positive engagement to employ Boyce or Dorosalski until they had arrived in this country, and were found to be suitable persons to employ.

I conclude, therefore, that the petition does not show such a contract or agreement to perform labor or service existing when the aliens' transportation was prepaid as brings the case within the statute. I am led to this conclusion the more readily as the law is highly penal, and must be strictly construed.