## UNITED STATES *v.* EDGAR.

*(Circuit Court of Appeals, Eighth Circuit. October Term, 1891.)*

IMMIGRATION—"ALIEN CONTRACT LABOR LAW"—WHAT CONSTITUTES CONTRACT.

A laborer in England wrote to a manufacturer in the United States stating that he had heard the latter wanted men to work in a certain branch of the business, and that himself and a comrade, who were experienced therein, desired to come to this country, and asking that passes be sent them. The manufacturer replied, inclosing tickets from Liverpool to St. Louis, and stating that he could give the applicants steady work. Nothing was said on either side as to time or compensation. The laborers came over on the tickets, but were returned by the commissioner of immigration at Philadelphia. *Held*, that the letters did not constitute a contract "made previous to said importation and migration," within the meaning of Act Cong. Feb. 26, 1885, imposing a penalty for assisting or encouraging the immigration of laborers under contract, since the act of coming to this country was necessary to make the arrangement a binding agreement in any respect. 45 Fed. Rep. 44, affirmed.

In Error to the Circuit Court of the United States for the Eastern Judicial District of Missouri.

Action against S. C. Edgar to recover the penalty prescribed by Act Cong. Feb. 26, 1885, § 3, (23 U. S. St. 332,) for aiding in the importation of alien laborers under contract. A demurrer to the petition was sustained, and a judgment entered for defendant.

STATEMENT. This is an action instituted in the court below by the plaintiff in error against defendant in error for an alleged violation of what is commonly called the "Alien Contract Labor Law," by assisting and encouraging the migration and importation of two aliens and foreigners, Isaac Boyce and Fred Dorosalski, into the United States from Bristol, England, to Philadelphia, in the United States, by prepaying their transportation, they being then under contract and agreement to perform labor or service for said defendant in error in the United States. The petition is in two counts, stating and reciting all of the facts, and each count asks judgment for the statutory penalty of $1,000. The counts are the same, except as to the name of the alien imported, and the alleged contract is contained in the two letters and the acts done in pursuance of them, as set out in the two counts. The letters were transmitted and received by mail, as addressed, the first to the manager or agent of the defendant in error, who delivered it to the latter, who thereupon answered it. The letters are as follows :

"No. 16 AIKEN ST., BARTON HILL, BRISTOL, April 11, 1890.

"*From Mr. I. Boyce to Mr. Gray, the Manager*—DEAR SIR: I have heard that you are in wont of men to work on the spilter furnaces. I and one of my fellow-workmen would like to come out hear, as the works hear is very slack; if it would be convenient for you to send us a pass each, we would come out as soon as possible. We have both worked in the spelter works for many years. Would you oblige us by writing back to let us now, and oblige,

[Signed]                                  "I. BOYSE,
            "No. 16 Aiken street, Barton Hill, Bristol, England.
    "The name of my fellow-workman, Fred Dorosalski."

"[S. C. Edgar, Lessee Glendale Zinc-Works, Manufacturers and Refiners of Spelter.]

"SOUTH ST. LOUIS, 1st July, 1890.

"*I. Boyse, No. 16 Aiken Street, Barton Hill, Bristol, England*—DEAR SIR: Your letter of April 11th has just been handed me, and I have this day bought two tickets for you and Fred Dorosalski from St. Louis agent of American line, and all you have to do is to take this letter to Ricardson, Spence & Co., No. 17 Water street, Liverpool, and get tickets through to St. Louis. We can give you steady work, and have places for about six or eight more smelters if they want to come. I run fourteen Belgium furnaces. Tickets will not be good after July 18th.                Yours, truly,
        [Signed]                              "S. C. EDGAR."

The facts are that, immediately upon receipt of the latter letter, it was presented as therein directed, tickets received for passages to St. Louis, that were paid for by defendant in error, and the parties named thereupon took passage on a vessel from England for Philadelphia, intending to come to St. Louis and perform service and labor for defendant in er-

ror in pursuance of said contract. They arrived at Philadelphia on August 5th following the date of the latter letter, and the special agent of the treasury department and immigrant inspector, under the direction of the collector of customs there, examined into their condition, and found that they had been imported into the United States by the defendant in error in violation of said alien contract labor law as above set forth, and refused to permit them to land from said vessel, and they were accordingly sent back to England. The defendant in error demurred to each count in the petition on the grounds that it did not state facts sufficient to constitute a cause of action; that the correspondence did not constitute a contract; and the aliens did not land in the United States. The court sustained this demurrer, and the plaintiff in error declined to plead further, and final judgment was rendered for defendant in error.

*Geo. D. Reynolds*, for the United States.

*F. N. Judson*, for defendant in error.

Present, CALDWELL, NELSON, and HALLETT, JJ.

HALLETT, J. It is averred in the complaint that defendant secured the importation of two men from Barton Hill, Bristol, England, who were "then under contract and agreement with the defendant to perform service and labor for said defendant in the United States, which contract was made previous to said importation and migration" by means of correspondence through the mails. The letters which passed between the parties are set out in the complaint, and they show a proposal on the part of the men to come to St. Louis and to enter into defendant's service on condition that transportation should be furnished them, and acceptance by defendant. It is averred, also, that defendant paid the passage of the men from Liverpool to St. Louis, and they came as far as Philadelphia in pursuance to the agreement with him. When the men arrived at Philadelphia, the facts having come to the knowledge of the officers of the government at that place, they were returned to England, pursuant to the provisions of an amendatory act approved February 23, 1887, (24th St. 414.) Upon the letters which passed between the parties, and the payment of passage money by defendant, and the act of the men in coming to Philadelphia, it is difficult to make a complete contract to perform labor, because the elements of time and compensation are entirely omitted.

But there is force in the suggestion of counsel for the government that, in construing a measure of public policy in a case where there may be reason to believe that the act complained of is in violation of the spirit if not the letter of the law, we ought not to be critical about the terms of the contract for labor mentioned in the statute; and we are not disposed to declare what shall be a sufficient contract under the law. The difficulty in supporting the complaint is that there does not appear to have been any contract or agreement whatever between defendant and the Englishmen, "made previous to the importation or migration of such alien or aliens, foreigner or foreigners." The letter written by one of the Englishmen, and defendant's answer, did not make a contract or agree-

ment of any kind, until something further should be done. The act of the Englishmen in getting the tickets at Liverpool, and coming to Philadelphia, was necessary to complete the contract or agreement, such as it was. In other words, when the defendant prepaid the Englishmen's passage, and thus assisted and encouraged them to come to the United States, there was no contract for labor which had been previously made by them; and so the case is not within the statute. The point has been ruled the same way in other circuits. *U. S.* v. *Craig*, 28 Fed. Rep. 795; *U. S.* v. *Borneman*, 41 Fed. Rep. 751. The judgment of the circuit court is affirmed.

Affirmed.