## AULTMAN, MILLER & CO. v. HOLDER.

(Circuit Court, E. D. Michigan. May 13, 1895.)

No. 8,044.

1. CONTRACTS—LAW OF PLACE.
    Plaintiff, an Ohio corporation, having its principal place of business at A., in that state, made a contract with defendant, a resident of Michigan. The contract was executed by defendant in Michigan, and subsequently countersigned by plaintiff's agent in that state and approved at plaintiff's main office at A., pursuant to a provision, contained in it, that it was "not valid unless countersigned by our manager at L. and approved at A." *Held*, that the contract was made in Ohio, and was not within the terms of a statute of Michigan relating to contracts made in that state.

2. INTERSTATE COMMERCE—TAXATION—MICHIGAN STATUTE.
    The statute of Michigan (Act No. 182 of 1891, as amended by Act No. 79 of 1893), providing that "every foreign corporation * * * which shall hereafter be permitted to transact business in this state * * * shall pay to the secretary of state the franchise fee of one-half of one mill upon each dollar of the authorized capital stock. * * * All contracts made in this state * * * by any corporation which has not first complied with the provisions of this act shall be wholly void,"—is void, as a regulation of interstate commerce, as applied to the business of a foreign corporation engaged in selling its wares by itinerant agents in the state of Michigan.

This was an action of assumpsit by Aultman, Miller & Co. against William Holder. The case was submitted to the court, without a jury, upon an agreed statement of facts. Judgment for plaintiff.

The plaintiff is a corporation organized under the laws of the state of Ohio, and is engaged in the business of manufacturing agricultural implements at Akron, in that state, and sells reapers and mowers in Michigan, through local agents at different places, who sell on commission for the company, and as its agents. A written contract is entered into between the company and the agent similar in form to that sued upon in this case. The action is assumpsit, and

is brought against the defendant, William Holder, who is a citizen of Michigan, resident of Lansing, and acted for the plaintiff as a commission agent under the contract executed by himself at Lansing, February 27, 1894, and there countersigned by the local agent of the plaintiff under these provisions of the contract: "This contract not valid unless countersigned by our manager at Lansing, and approved at Akron." The parties have signed and filed a stipulation of facts of which the following is a copy:

"To Said Court: It is agreed between the parties to the above action that the following facts are agreed upon without the submission of evidence, and the parties ask that this stipulation of facts be made a part of the record: First. It is agreed that the contract referred to between the parties was executed, accepted, and approved, as set forth in the said contract. Second. It is agreed that the provisions of the contract, in so far as plaintiff is concerned, have been fulfilled. Third. It is agreed that the balance due, amounting to five thousand and fifty-two and fifty-six hundredths dollars ($5,052.56), is correct. Fourth. It is agreed and admitted that Aultman, Miller & Co. is a corporation organized and existing under the general laws of Ohio, having its corporate office in the city of Akron, county of Summit, and state of Ohio, and having its manufactory at the same place. Fifth. It is agreed and admitted that Aultman, Miller & Co. does not manufacture any goods whatever within the state of Michigan. Sixth. It is agreed that Aultman, Miller & Co. sells its goods by means of local commission agents, and that it has a general agent at the city of Lansing, and that its commission agents are under similar contracts with the plaintiff to the one set forth in this action. Seventh. It is agreed and admitted that all contracts are sent to Aultman, Miller & Co., at Akron, Ohio, for approval or rejection before taking any effect. Eighth. It is agreed and admitted that the goods sold by Aultman, Miller & Co. in the state of Michigan, and manufactured at its factory at Akron, Ohio, are shipped from the factory upon orders received from commission agents, forwarded by the general agent from Lansing to Akron. Goods are shipped either direct to the commission agent or in bulk to Lansing, or various points throughout the state, and reshipped in smaller lots direct to the commission agent. Ninth. It is agreed and admitted that Aultman, Miller & Co. own a warehouse in the city of Lansing, for the transfer of such reshipments, for the temporary storage of a small stock of extras or repairs, which experience has shown may be suddenly needed by customers throughout the state during the harvest season. A portion of the commission agents throughout the state also keep on hand a very small stock of repairs, for the immediate use of their customers. These are partially commission goods and partially goods sold direct to them. Tenth. It is agreed and admitted that accounts with every commission agent in the state of Michigan are kept at the office of the plaintiff in Akron, Ohio. Eleventh. It is agreed and admitted that the plaintiff effects settlement with its commission agents by sending to its general agent copies or statements of all such accounts, that the general agent and his assistant check over the season's work with the commission agent, collect pay for the machines sold in notes or cash, or both, and forward the same direct at once to the plaintiff at Akron, Ohio, and that the notes so taken are subject to the approval or rejection of the plaintiff. Twelfth. It is agreed and admitted that all notes taken by the commission agents of Aultman, Miller & Co. are sent through its general agent at Lansing, to the factory at Akron, Ohio, where they are numbered, recorded, filed, and retained until just before maturity, when they are sent direct to banks or express companies for collection and remittance direct to Akron, Ohio.       F. A. Baker, Attorney for Plaintiff.

"Wood & Wood, Attorneys for Defendant."

As will be seen, it is agreed and admitted that the balance due the plaintiff from the defendant, arising out of the business done by the defendant for the plaintiff at Lansing, as its agent as aforesaid, under the contract referred to, amounted on the 3d day of November, 1894, to $5,052.56. The declaration sets forth fully the breaches of contract relied upon by the plaintiff, from which this balance arose. The plea of the defendant is the general issue, with notice in accordance with the authorized practice at law in the courts of Michigan that the defendant will show under said plea that Act No. 182 of the Laws of Michigan for the year 1891, as amended by act No. 79 of the Laws

of Michigan for the year 1893, provides that: "Every foreign corporation or association which shall hereafter be permitted to transact business in this state, which shall not, prior to the passage of this act have filed or recorded its articles of association under the laws of this state, and been thereby authorized to do business herein, shall pay to the secretary of state, the franchise fee of one-half of one mill upon each dollar of the authorized capital stock of such corporation or association and a proportionate fee upon any and each subsequent increase thereof; and that every corporation heretofore organized or doing business in this state which shall hereafter increase the amount of its capital stock shall pay a franchise fee of one-half of one mill upon each dollar of such increase of authorized capital stock of such corporation or association and a proportionate fee upon any and each subsequent increase thereof; provided that the fee herein provided, except in cases of increase of capital stock shall in no case be less than five dollars; and in case any corporation or association hereafter incorporated under the law of this state or foreign corporation authorized to do business in this state, has no authorized capital stock, then in such case each and every corporation or association so incorporated or doing business in this state shall pay a franchise fee of five dollars. All contracts made in this state after the first day of January, 1894, by any corporation which has not first complied with the provisions of this act shall be wholly void. This act is ordered to take immediate effect. Approved May 13th, 1893." The notice further declares that the contract set forth in plaintiff's declaration, and upon which the right of recovery is based, was made and is to be performed in the state of Michigan, within the meaning of the said act. Also that said plaintiff, being a foreign corporation, was, at the time of the execution of said contract, doing business in the state of Michigan, within the meaning and application of said statute, and has not complied with the requirements thereof, nor before nor since the passage of such statute has it filed or recorded its articles of association with the secretary of state for the state of Michigan, nor paid to said secretary of state the franchise fee of one-half of one mill upon each dollar of its authorized capital stock; that, owing to plaintiff's noncompliance with said statute, the said contract is absolutely void and without force as against said defendant.

F. A. Baker, C. A. Sadler, and C. C. Kirkpatrick, for plaintiff.
Wood & Wood, for defendant.

SWAN, District Judge. The questions arising in this case have been argued with great learning and ability by counsel, and, although the discussion has taken a wide range, it has left for determination but two inquiries: (1) Was the contract sued upon made in this state? (2) Is the statute upon which the defense is founded a regulation of commerce obnoxious to the constitutional grant of the power over that subject conferred upon congress?

In regard to the first of these questions, it will be noticed that the provision of the statute upon which reliance is had for the avoidance of the defendant's liability for the sum found due from him to the plaintiff limits its penalty to "contracts made in this state after the first day of January, 1894." This contract was made, it is admitted, after that date. What was the locality of its execution? It did not become a contract until all the parties executed it. By its express provision it was not to be valid until countersigned by the agent of the plaintiff at Lansing, and approved at Akron, Ohio. This latter requisite—the approval of the plaintiff - is the crowning act of its consummation, as expressing the agreement of the parties. It, therefore, was not made until, by plaintiff's approval, it was perfected and adopted. Until then it was an imperfect obligation, having no force whatever. The act which gave it vitality was

performed outside of the state of Michigan, i. e. in the state of Ohio. It seems clear, therefore, that it was not a contract made in this state, within the prohibition of the statute. The question of construction of the language of the statute is analogous to that arising upon the alien labor acts, which have been the subject of much discussion in the federal courts. In cases founded on those acts, a vital element of the offense is the making of a contract in a foreign country with a nonresident alien, previous to the immigration or importation of such alien into the United States, to perform. labor or service in this country, and in pursuance of which such nonresident alien comes to the United States and enters upon the performance of the contract. There, as here, the character of the act is made to depend upon the locality of the . execution of the prohibited contract. It is perfectly lawful, notwithstanding the alien labor acts, to contract with an alien within the jurisdiction of the United States. U. S. v. Craig, 28 Fed. 795, 799; U. S. v Edgar, 45 Fed. 44; same case on error, 1 C. C. A. 49, 48 Fed. 91. Thus, in the Michigan statute, no penalty is directed against the execution of a contract outside of the state by a corporation which has not complied with the provisions of the acts of 1891 and 1893. The inquiry, therefore, is not by what law the contract is to be construed,—whether that of the place of its execution or that of its performance,—or of the form in which suit may be brought upon it. The single question is, where was it executed? And upon the admitted facts of this case, evidenced by the stipulation, the concessions of counsel, and the fair construction of the clause "and approved at Akron," but one answer can be given to this inquiry. It became. the contract of the parties at Akron, Ohio, and was not made in the state of Michigan, within either the language or the spirit of the act of the legislature pleaded in defense. Giving to the language of the act its natural and obvious meaning, the phrase "made in the state of Michigan" can have but one interpretation, and must be held to designate contracts there perfected by the assent of all parties. It is not necessary to invoke the rule that a penal act is to be strictly construed, for the language employed has excluded all doubt of the intent of the legislature. The contract sued upon is not avoided by the act of 1893.

2. Upon the second question, as to the constitutionality of the state statute, there is, in my judgment, as little doubt as upon the first. By the contract sued upon the defendant "is hereby authorized to sell Buckeye mowers, reapers, and binders, and extra parts thereof, in the following territories, viz.: Laingsburg and vicinity and Elsie and vicinity, including the townships of Washington and Elba, in Gratiot county, and Chapin in Saginaw county, and the west half of Fairfield in Shiawassee county, for and during the season of 1894." The defendant, therefore, was not a resident local agent of the plaintiff, and, although selling on commission, was really, as the contract contemplates, nothing more than an itinerant vendor in the territory specified. The fact that the company had a warehouse at Lansing, where it stored its implements, and the necessary "repairs" or parts of the machines which it manufactured and

sent here for sale, in order that it might meet the demands of those having its machines to supply such repairs or parts, is immaterial in this case. Without doubt, property so stored and kept within the state of Michigan, for the convenience of the company and the promotion of its business, in affording facilities to its customers for the purchase and repair of the implements which it manufactured and sold, unless these were merely in transit for delivery to customers here, would authorize the state to tax such property for the protection it received, but the right to taxation of such property is not in question here. The state statute really imposes a tax upon the corporations included within its provisions for the privilege of selling their wares in Michigan, and therefore is obviously a tax upon interstate commerce within the provisions of the federal constitution, and the decisions of the supreme court of the United States. It is equally so regarded by the supreme court of the state, and in Coit v. Sutton, 60 N. W. 690, decided in October, 1894, the supreme court of Michigan, in passing upon this very statute, so decided, holding that it imposed a tax "upon the occupation of the corporation, with a provision that all its contracts shall be void until the tax is paid, which, if enforced, would embarrass plaintiff in its commerce with noninhabitants of Michigan. It must, therefore, be held that the act in question does not apply to foreign corporations whose business within this state consists merely of selling through itinerant agents, and delivering commodities manufactured outside of this state." The opinion cites many decisions of the supreme court of the United States upon the construction of the commerce clause of the constitution, which all sustain this conclusion. In addition to these, the cases of Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, Brennan v. City of Titusville, 153 U. S. 289, 14 Sup. Ct. 829, and Covington & C. Bridge Co. v. Com., 154 U. S. 204, 14 Sup. Ct. 1087, in which cases the opinions of the court are delivered respectively by Mr. Justice Bradley, Mr. Justice Brewer and Mr. Justice Brown, review fully the authorities upon this question, and render unnecessary any lengthy discussion of the question upon principles. The fact that the act of 1893 (Laws 1893, p. 82) does not discriminate against foreign corporations does not exempt it from the charge of being an interference with interstate commerce. This point is so fully discussed in several of the cases cited supra that it need not here be elaborated. Indeed the decision of the supreme court of the state of Michigan leaves nothing to be said in support of the statute as applied to this case. There is nothing in the stipulation of facts which takes the case outside of the effect of that decision.

The judgment must be entered for the plaintiff for the sum of $5,052.56, with interest at 6 per cent. from November 3, 1894.