(20 App. Div. 494.)

### PEOPLE v. HAWKINS.

(Supreme Court, Appellate Division, Third Department. September 8, 1897.)

1. CONSTITUTIONAL LAW—INTERSTATE COMMERCE.
    Laws 1896, c. 931, prohibiting the sale of goods made by convict labor unless labeled as such, as applied to articles of commerce made in a foreign state, conflicts with the interstate commerce clause of the federal constitution.
2. SAME—POLICE POWER.
    Such statute, as applied to a scrub brush made in another state by convict labor, is not within the police power of the state.

Appeal from special term, Broome county.

Samuel K. Hawkins was indicted for selling and exposing for sale a scrub brush made by convict labor, without having thereon any label, as required by Laws 1896, c. 931. From a judgment entered on a decision sustaining a demurrer to the indictment, the people appeal. Affirmed.

Chapter 698, Laws N. Y. 1894, provided that no person should have in his possession for the purpose of sale, or offer for sale, any convict-made goods manufactured in any state other than the state of New York, without being branded or labeled, as specified in the act. This statute was repealed by chapter 931, Laws 1896, which provides that all goods made by convict labor, which included those

made in the state of New York, before being exposed for sale or sold, shall be labeled, marked, or branded, as in the act mentioned; and, by the last-named act, section 384b of the Penal Code was amended so as to provide that any person having in his possession for sale, or offering for sale, any convict-made goods without being so branded, marked, or labeled, shall be guilty of a misdemeanor. The defendant was indicted by the grand jury of Broome county on the 25th day of November, 1896, for an alleged offense under the provisions of the act of 1896. In the indictment he was charged with having on the 5th day of November, 1896, in his possession for the purpose of sale, and selling, a certain scrub brush, "which said scrub brush was of the form, style, and material commonly used in scrub brushes," and was manufactured by convict labor in Cleveland, in the state of Ohio, and did not have thereon, or attached thereto, any label, mark, or brand, as required by the act in question. The defendant demurred to the indictment, on the ground that the facts stated therein did not constitute a crime. The demurrer was sustained by the court below, and from the judgment entered upon its decision this appeal is taken.

It is claimed by the respondent that chapter 931, Laws 1896, as far as applicable to the sale by the defendant of a scrub brush manufactured by convict labor in the state of Ohio, is repugnant to the interstate commerce and other provisions of the constitution of the United States, and also to that portion of the constitution of the state of New York which provides that "no person shall be * * * deprived * * * of property without due process of law." On the part of the appellant it is urged that the act under consideration was properly enacted under the police power of the state.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Harry C. Perkins (James A. McCormick, Dep. Atty. Gen., of counsel), for the People.

Reynolds, Stanchfield & Collin (Frederick Collin, of counsel), for respondent.

PUTNAM, J.  The defendant was indicted for having in his possession for the purpose of sale, and selling, "a certain scrub brush, which * * * was of the form, style, and material commonly used in scrub brushes," manufactured by convict labor in the state of Ohio, and which was not branded, as required by the provisions of chapter 931, Laws 1896. It was not alleged in the indictment that the brush was not a good one; was not the same, in all regards, as that made by other than convict labor. It does not appear that it was not a merchantable article,—an article of commerce. It cannot be doubted that, unless the act we are called upon to examine on this appeal can be sustained as a valid exercise of the police power of the state, it must be condemned as a violation of the provisions of the interstate commerce provision of the national constitution. Under this statute, a citizen of Ohio, purchasing, or coming into possession of, property recognized as such by the laws of that state,— an article of commerce,—is prohibited from offering for sale, or selling, the same in this state.  A citizen of this state, going to Ohio, purchasing such property, and returning with it, is likewise prohibited from disposing of it.  The act is in fact prohibitory.  The property, as purchased in another state, cannot be sold here without rendering the vendor liable in a criminal prosecution.  It is true, if he is able to ascertain the prison in which, and the time when, it was manufactured, he may, by changing the article, by branding it, be allowed to offer it for sale; but he cannot dispose of it in the condi-

tion it was in when it came into his possession. In People v. Hawkins, 85 Hun, 43, 32 N. Y. Supp. 524, the provisions of chapter 698, Laws 1894, were considered. The act was held to be unconstitutional, because it discriminated between convict-made goods of other states and those made in the state of New York. In that case (page 45, 85 Hun, and page 526, 32 N. Y. Supp.) Martin, J., said:

"Commerce among the states cannot be said to be free when a commodity is, by reason of its foreign manufacture, subjected by a state legislature to discriminations or burdens. The main object of commerce between the states being the sale and exchange of commodities, the policy that interstate commerce should be free and untrammeled would be defeated by discriminating legislation like that of the act in question."

Although, in the case cited, the decision was placed upon the ground that the act therein considered discriminated between convict-made goods of other states and those of New York, yet it must be deemed an authority to sustain the proposition that a scrub brush manufactured by convict labor in the state of Ohio is an article of commerce, under the provisions of the interstate commercial clause of the national constitution, and that chapter 931, Laws 1896, as far as it applies to such property, is a restriction—a burden—upon commerce between the states.

Can the act in question, therefore, as far as it applies to convict-made goods in other states, be sustained? As we have seen, it is, in effect, prohibitory. It prevents the sale of such foreign convict-made goods unless changed and branded. The act certainly imposes a restriction upon the disposition of convict-made goods of foreign manufacture.

In Re Ware, 53 Fed. 783, the defendant was committed to jail in the state of Minnesota for selling baking powder containing alum, manufactured in another state, without being marked with the words "This baking powder contains alum," as required by the laws of Minnesota. It was held that "baking powder is a well-known article of commerce among the states. It belongs to commerce. The sale of an article imported from another state is a part of interstate commerce, and may not be prohibited or burdened by the legislature of the states." The same doctrine is stated in Re Sanders, 52 Fed. 802; Ex parte Kieffer, 40 Fed. 399; Voight v. Wright, 141 U. S. 62, 11 Sup. Ct. 855. It will be observed in the case last cited, as in the case of People v. Hawkins, supra, the decision was placed upon the ground that the act held to be unconstitutional was a law discriminating between the products of different states. But, as we understand the authorities, a state law, the effect of which is to restrict, burden, or prohibit interstate commerce, is void, although, by its terms, made applicable to the state whose legislature enacts it.

In Brimmer v. Rebman, 138 U. S. 78, 11 Sup. Ct. 213, a statute of the state of Virginia, declaring it to be unlawful to offer for sale any beef, veal, or mutton from animals slaughtered 100 miles or more from the place where it is offered for sale, unless it has been previously inspected and approved by local inspectors, the act was held to be void as being in restraint of commerce, and in the opinion (page 82, 138 U. S., and page 214, 11 Sup. Ct.) the following language is used:

"Nor can this statute be brought into harmony with the constitution by the circumstance that it purports to apply alike to the citizens of all the states, including Virginia; for a burden imposed by a state upon interstate commerce is not to be sustained simply because the statute imposing it applies alike to the people of all the states, including the people of the state enacting such statute."

The same doctrine was stated in Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592; Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862; Bowman v. Railway Co., 125 U. S. 465-496, 8 Sup. Ct. 689, 1062.

In Robbins v. Taxing Dist., supra, it is said:

"It is strongly urged, as if it were a material point in the case, that no discrimination is made between domestic and foreign drummers,—those of Tennessee and those of other states; that all are taxed alike. But that does not meet the difficulty. Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state. This was decided in the case of The Freight Tax, 15 Wall. 232."

Under the authorities above cited, chapter 931, Laws 1896, the effect of which was to prohibit or to cast burdens upon the introduction into this state of a lawful article of commerce, is a violation of the interstate commerce clause of the national constitution, unless the act can be sustained as an exercise of the police power of the state. In considering this branch of the case, we should bear in mind the well-settled doctrine "that the police power cannot be set up to control the inhibitions of the federal constitution, or the powers of the United States government created thereby." New Orleans Gaslight Co. v. Louisiana Light & Heat Producing & Manuf'g Co., 115 U. S. 650, 6 Sup. Ct. 252; Walling v. Michigan, 116 U. S. 446-460, 6 Sup. Ct. 454; Brennan v. City of Titusville, 153 U. S. 289-299, 14 Sup. Ct. 829; In re Application of Jacobs, 98 N. Y. 98-108; People v. Gillson, 109 N. Y. 389-401, 17 N. E. 343. But, although a state cannot, under its police power, substantially prohibit or burden interstate commerce, it may, for the purpose of protection, in certain extreme cases enact laws that indirectly affect such commerce.

In Lake View v. Rose Hill Cemetery Co., 70 Ill. 191, it was held that:

"The police power of the state is co-extensive with self-protection, and is not inaptly termed 'the law of overruling necessity.' It is that inherent and plenary power in the state which enables it to prohibit all things hurtful to the comfort, safety, and welfare of society."

In Crutcher v. Kentucky, 141 U. S. 47-61, 11 Sup. Ct. 851, speaking of the police power of the state, Bradley, J., said:

"But while it is only such things as are clearly injurious to the lives and health of the people that are placed beyond the protection of the commercial power of congress, yet when that power, or some other exclusive power of the federal government, is not in question, the police power of the state extends to almost everything within its borders; to the suppression of nuisances; to the prohibition of manufactures deemed injurious to the public health; to the prohibition of intoxicating drinks, their manufacture or sale; to the prohibition of lotteries, gambling, horse racing, or anything else that the legislature may deem opposed to the public welfare."

The power of a state to prohibit all things clearly hurtful to the comfort, safety, and welfare of society is reserved to it, not ceded to the United States government, and hence not repugnant to the interstate commercial provision in the national constitution.

The true doctrine is well stated in the opinion of Catron, J., in the License Cases, 5 How. 504–599, quoted and approved by Matthews, J., in Bowman v. Railway Co., 125 U. S. 489, 490, 8 Sup. Ct. 689, 1062, as follows, viz.:

"The assumption is that the police power was not touched by the constitution, but left to the states as the constitution found it. This is admitted; and, whenever a thing, from character or condition, is of a description to be regulated by that power in the state, then the regulation may be made by the state, and congress cannot interfere. But this must always depend on facts subject to legal ascertainment, so that the injured may have redress; and the fact must find its support in this, whether the prohibited article belongs to, and is subject to be regulated as part of, foreign commerce, or of commerce among the states. If, from its nature, it does not belong to commerce, or if its condition, from putrescence or other cause, is such, when it is about to enter the state, that it no longer belongs to commerce, or, in other words, is not a commercial article, then the state power may exclude its introduction; and, as an incident to this power, a state may use means to ascertain the fact. And here is the limit between the sovereign power of the state and the federal power,—that is to say, that which does not belong to commerce is within the jurisdiction of the police power of the state, and that which does belong to commerce is within the jurisdiction of the United States."

The question then arises whether an ordinary scrub brush or other convict-made goods manufactured in the state of Ohio "belongs to commerce." If so, under the authority last cited, such property is not within the police power of the state. As we have seen, the case of People v. Hawkins, supra, may be deemed an authority that the property, for the selling of which without being branded the defendant was indicted, was an article of commerce, within the provisions of the national constitution. In the absence of any adjudication upon the subject, we are unable to believe that an ordinary merchantable scrub brush manufactured by the authorities of the state of Ohio, and placed upon the markets of that state, recognized there as property, not claimed to have been an inferior or deceptive article, was not an article of commerce, because made under the authority of said state by convict labor. We think it was property owned by the defendant, and which he had a right to own, possess, and dispose of without any restrictions whatever.

Our conclusion is that chapter 931, Laws 1896, so far as applicable to the defendant, was not within the police power of the state. It was not a statute to prevent or restrain the sale of articles clearly injurious to the lives, health, or welfare of the people, and hence, under doctrines enunciated in Crutcher v. Kentucky, and other cases above cited, within the reserved powers of the state. Its object was to prohibit or restrain the sale of articles of commerce manufactured by other states, and recognized there as such.

We have examined the authorities cited by the learned counsel for the appellant, and are of opinion that they do not conflict with those above referred to. As we have seen, the power of a state to pass police laws relating to the public health, morals, safety, or welfare, where the commercial, or some other exclusive, power of the national government is not in question, is unquestionable. In such cases, as said in Crutcher v. Kentucky, supra, "the police power of the state extends to almost everything within its borders"; while in those re-

lating to interstate commerce, as held in Bowman **v.** Railway Co., supra, the police power of a state only extends to property which does not belong to commerce.

For the reasons above suggested, and without considering other questions raised, we conclude that the judgment should be affirmed. All concur.