## PEOPLE ex rel. PHILLIPS v. RAYNES.

(Supreme Court, Appellate Division, First Department. January 21, 1910.)

1. LICENSES (§ 11*)—OCCUPATION TAX.

A tax on a business or occupation of a resident conducted within the state is valid.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 18; Dec. Dig. § 11.*]

2. COMMERCE (§ 72*)—INTERSTATE COMMERCE—INTERFERENCE BY STATE—TAXATION.

Where goods have been brought within the state, and have entered into the body of the merchandise therein situate, they lose their character as articles of interstate commerce, and become subject to taxation within the state.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 123; Dec. Dig. § 72.*]

3. CONSTITUTIONAL LAW (§ 42*)—VALIDITY OF STATUTES—PERSONS ENTITLED TO RAISE QUESTION.

Unless a person setting up the unconstitutionality of a statute belongs to the class for whose sake the constitutional protection is given or the class primarily protected, the question will not be considered.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40; Dec. Dig. § 42.*]

4. CONSTITUTIONAL LAW (§§ 229, 283*)—TAXING POWER—CONSTITUTIONAL LIMITATIONS.

The taxing power of the state is subject to the fourteenth amendment to the federal Constitution, forbidding any state to deprive any one of property without due process of law, or to deny to any person the equal protection of the law, and, while the taxing power may extend to all kinds of persons and property within the state, or may be restricted to certain kinds or limited area, it is subject to the rule that all persons under like circumstances must be treated alike, and classification of persons and property for taxation must not be arbitrary.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 685, 891; Dec. Dig. §§ 229, 283.*]

5. CONSTITUTIONAL LAW (§ 230*)—EQUAL PROTECTION OF THE LAWS—TAXATION.

Labor Law (Consol. Laws, c. 31) § 190, imposing a license on persons selling convict-made goods, construed as a revenue measure, is invalid, because the classification based on the origin of the goods without regard to their quality or nature is unreasonable in violation of the fourteenth amendment to the federal Constitution, insisting on the equal protection of the law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 687; Dec. Dig. § 230.*]

Appeal from Special Term, New York County.

Habeas corpus by the People, on the relation of Louis Phillips, against Edward Raynes, a peace officer of the county of New York,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for the discharge of relator. From an order discharging relator, the people appeal. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Edward R. O'Malley, Atty. Gen. (Edward H. Letchworth, Deputy Atty. Gen., of counsel), for appellants.

Mortimer Fishel, for respondent.

CLARKE, J. The relator, a resident of the state, who owned and conducted a store in the city of New York, was arrested upon a warrant issued by a city magistrate for an alleged violation of the provisions of section 190 of the labor law, being chapter 31 of the Consolidated Laws, chapter 36 of the Laws of 1909; the charge being that, not having a license to sell convict-made goods, wares, and merchandise, he had sold in the store 11 boys' shirts for $2.50, which said shirts were convict-made in the Illinois Penitentiary, Joliet, Ill.

The said section is as follows:

"No person or corporation shall sell, or expose for sale, any convict-made goods, wares or merchandise, either by sample or otherwise, without a license therefor. Such license may be obtained upon application in writing to the comptroller. * * * Such application shall be accompanied with a bond, executed by two or more responsible citizens, or some legally incorporated surety company authorized to do business in this state, to be approved by the comptroller, in the sum of five thousand dollars, and conditioned that such applicant will comply with all the provisions of law relative to the sale of convict-made goods, wares and merchandise. Such license shall be for the term of one year unless sooner revoked. Such person or corporation shall pay, annually, on or before the fifteenth day of January, the sum of five hundred dollars as a license fee, into the treasury of the state, which amount shall be credited to the maintenance account of the state prisons. Such license shall be kept conspicuously posted in the place of business of such licensee."

Section 192 provides for a verified statement by the licensee to the secretary of state each year, setting forth the names of the persons, agents, wardens, or keepers of the prisons using convict labor with whom he has done business and the name and address of the person or corporation to whom he has sold goods, wares, and merchandise, and in general terms the amount paid to each of such agents, wardens, or keepers for goods, wares, or merchandise, and the character thereof.

Section 193 provides for branding or labeling convict-made goods, and that no convict-made goods, wares, and merchandise shall be sold without such brand or label. Section 194 makes it the duty of the commissioner of labor to enforce the provisions of this article, to advise the district attorney of violations, who shall at once institute prompt proceedings to compel compliance with this article and secure convictions for violations. Upon the conviction of a person or corporation for a violation of this article one-half of the fine recovered shall be paid and certified by the district attorney to the commissioner of labor, who shall use such money in investigating and securing information in regard to violations of this chapter and for securing such convictions.

Section 620 of the penal law (Consol. Laws, c. 40) provides that:

"A person who: (1) Sells or exposes for sale convict-made goods, wares or merchandise, without a license therefor, or having such license does not trans-

mit to the secretary of state the statement required by article thirteen of the labor law; or (2) sells, offers for sale, or has in his possession for sale any such convict-made goods, wares or merchandise without the brand, mark or label required by article thirteen of the labor law; or (3) removes or defaces or in any way alters such brand, mark or label, is guilty of a misdemeanor, and upon conviction therefor shall be punished by a fine of not more than $1,000 nor less than $100, or by imprisonment for not less than ten days or by both such fine and imprisonment."

Chapter 698 of the Laws of 1894 provided that "any person having in his possession, for the purpose of sale or offering for sale, any convict-made goods manufactured in any state other than the state of New York, without being branded or labeled" as specified in the act, should be guilty of a misdemeanor. This act was declared to be unconstitutional in People v. Hawkins, 85 Hun, 43, 32 N. Y. Supp. 524, because it discriminated between convict-made goods of other states and those made in the state of New York; the court saying:

"Commerce among the states cannot be said to be free when a commodity is by reason of its foreign manufacture subjected by a state Legislature to discriminating regulations or burdens."

The said statute was repealed by chapter 931 of the Laws of 1896, which provided that all goods made by convict labor (which included those made in the state of New York) before being exposed for sale or sold shall be labeled, marked, or branded as in the act mentioned. This act was declared to be unconstitutional. People v. Hawkins, 20 App. Div. 494, 47 N. Y. Supp. 56, affirmed 157 N. Y. 1, 51 N. E. 257, 42 L. R. A. 490, 68 Am. St. Rep. 736. In the Court of Appeals Judge O'Brien condemned the law upon the ground that it was in conflict with the Constitution of this state, since it interfered with the right to acquire, possess, and dispose of property, and with the liberty of the individual to earn a living by dealing with the articles embraced within the scope of the law; that it was an unauthorized limitation upon the freedom of the individual to buy and sell all such articles, subject only to the law of supply and demand, and the legislation was not within the scope of the police power; and also upon the ground that it was in violation of the commerce clause of the federal Constitution. "A state law which interferes with the freedom of commerce is not saved by the fact that it applies to all states alike, including the state enacting it. Interstate commerce cannot be taxed, burdened, or restricted at all by state laws, even though operating wholly within its own jurisdiction. If it is a regulation of commerce, the law relates to a subject within the exclusive jurisdiction of Congress, upon which the state has no power to legislate. It matters not whether the regulation be under the guise of a law requiring a municipal license to sell certain goods, or a health law requiring inspection of the article, or a label law, as in this case, requiring the article to be branded or labeled. When they operate as burdens or restrictions upon the freedom of trade or commercial intercourse, they are invalid. * * * This statute manifestly discriminates against the sale of goods made in a prison in the state of Ohio by a certain class of workmen and in favor of the same articles when made outside a penal institution and by free labor. * * * Trade and commerce between the states must

be left free. The Constitution intended that it should be affected only by natural laws and the ordinary burdens of government imposed through the exercise of the taxing power equally on all property. The police power of a state cannot be used to depress the price or restrict the sale of articles of commerce merely because they happen to be made in a prison or by a certain class of workmen, while the same articles made in some other place and by free labor are left untouched by the regulation. A citizen of this state who happens to buy goods made in a prison in Ohio has the right to put them upon the market here on their own merits, and if this right is restricted by a penal law, while the same goods made in factories are untouched, such a law is a restriction upon the freedom of commerce, and the objection to it is not removed by the fact that it may have been enacted in the guise of a police regulation. The validity of such a law is to be tested by its purpose and practical operation without regard to the name or classification that may have been given to it." It was upon the latter ground that the three other judges of the court who made up the majority concurred.

In 1897 Labor Law, c. 415, was passed, and section 50 thereof provided for the licensing of dealers in convict-made goods, and is the source of the statute now under consideration. The two former acts, which had been declared to be unconstitutional, provided for the branding of the goods. The obvious purpose was to prevent the buying and selling of such goods. The act now under consideration for the same purpose brands the dealer. It requires him to take out a license which he must display conspicuously in his place of business, give a bond in the sum of $5,000, pay an annual license fee of $500, and make a verified annual statement to the secretary of state which shall disclose his every transaction in such goods.

It is clear that absolute prohibition alone could be more efficacious in preventing dealing in such articles. It is claimed that these provisions are not repugnant to the commerce clause of the federal Constitution, and, if so, that that point cannot be raised in this case because the relator is a resident of the state of New York and the goods which it is alleged he sold were part of the general merchandise of the state, and therefore do not constitute interstate commerce. He was not a drummer or an agent from another state undertaking to buy or sell within this state. The sale was not of goods located in another state, to arrive and be delivered in this state; nor were they in the original package. It is the law that a tax upon a business or occupation of a resident of a state conducted within that state is valid, and that, when goods have been brought within the state and have entered into the body of the merchandise therein situate, they lose their character as articles of interstate commerce, and become subject to taxation within the state. And it is further true that the Supreme Court of the United States has held that a law taxing drummers and commercial travelers, so far as it affects only the residents of a state, cannot be questioned by such resident. "Unless the party setting up the unconstitutionality of the state law belongs to the class for whose sake the constitutional protection is given, or the class primarily protected, this court does not listen to his objections, and will not go into imaginary cases, not-

withstanding the seeming logic of the position that it must do so, because if for any reason, or as against any class embraced, the law is unconstitutional, it is void as to all." New York ex rel. Hatch v. Reardon, 204 U. S. 152, 27 Sup. Ct. 188, 51 L. Ed. 415, and cases there collated.

So that, looking at this statute as a licensing act upon an occupation under the taxing power of the state, it would be difficult to maintain that it violated the commerce clause of the federal Constitution.

The appellant claims that it is valid as a tax law, that its purpose is to raise revenue, and that the revenue so raised is by the statute to be applied to the maintenance of the state prisons, and that, as the taxing power of the state is not restricted by the Constitution, the Legislature is to determine the objects of taxation; the remedy for unwise tax laws being lodged in the people at the polls and not in the courts. It is not now true that the power of taxation is without constitutional restraint, for the fourteenth amendment of the Constitution of the United States provides:

"That no state shall deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

While the taxing power may be extended to all kinds of persons and property within the state, or may be restricted to certain kinds, or limited area (People ex rel. Griffin v. Mayor, etc., of Brooklyn, 4 N. Y. 419, 55 Am. Dec. 266; People ex rel. Crowell v. Lawrence, 41 N. Y. 137; Gordon v. Cornes, 47 N. Y. 608; Genet v. City of Brooklyn, 99 N. Y. 296, 1 N. E. 777; Cayuga Co. v. State, 153 N. Y. 279, 47 N. E. 288; Gubner v. McClellan, 130 App. Div. 716, 115 N. Y. Supp. 755), it is subject to the one great rule that all persons, under like circumstances, shall be treated in the same way. Persons and property may be classified for taxation, but such classification may not be arbitrary, unreasonable, or capricious. Matter of Pell, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791. So that if we ignore in this statute its obvious purpose, writ so plain that all may read, namely, to prohibit by onerous and exasperating restrictions, under the guise of regulation, the buying and selling within this state of convict-made goods, and treat it purely as a revenue or tax law, the inquiry is: Is its classification unreasonable and capricious? The appellants say that it does not conflict with the rule of equality; that it puts into one class all who deal in convict-made goods and treats them all alike; and that that is a reasonable classification. Let us see. That classification is based upon the origin of the goods dealt in, without regard to the quality or character or nature of the goods themselves. Clothing, household furniture, shoes, scrubbing brushes, brooms, harness, anything that can be made by hand or machinery, falls within one classification, provided the origin is the same. Substitute a state for a prison, and no one would be willing to say that a law which required all persons who might deal in goods, wares, and merchandise made in New Jersey would be valid; or, if it be objected that that would be a direct violation of the federal Constitution, made in Troy, or in Schenectady, or in Buffalo. Take another classification,

that a license fee should be required for dealers in all goods made by machinery, or all goods made by hand. If such classification be valid, and if the purpose of the act, as is claimed, is to protect free labor from prison labor, why in these days of contest between organized and unorganized labor should not an act be passed which provided for such a license for selling all goods made in a shop which did not employ union labor, and then, if the advocates of a free shop were in power, repeal it, and provide for such license for all goods made in shops which employed union labor, or single out for license dealers in goods made in shops employing members of certain races, religions, or political parties. All these classifications would be based on origin, as is that under consideration.

In People ex rel. Hatch v. Reardon, 184 N. Y. 431, 77 N. E. 970, 8 L. R. A. (N. S.) 314, 112 Am. St. Rep. 628, affirmed 204 U. S. 152, 27 Sup. Ct. 188, 51 L. Ed. 415, the Court of Appeals had under consideration the stock transfer act—chapter 241 of the Laws of 1905—and held that a tax of two cents on each $100 of face value or fraction thereof of stock certificates was valid. Many cases in the courts of this state and of the Supreme Court of the United States were there considered. In People ex rel. Farrington v. Menaching, 187 N. Y. 8, 79 N. E. 884, 10 L. R. A. (N. S.) 625, the court held chapter 414 of the Laws of 1906, amending the stock transfer act so as to make the two cent tax applicable to each share, no matter what its face value might be, unconstitutional. The court said:

"We adhere without qualification to the decision made when the act of 1905 [Laws 1905, c. 241] was before us and broadly indorse the reasons given to support the judgment then rendered. People ex rel. Hatch v. Reardon, 184 N. Y. 431, 77 N. E. 970, 8 L. R. A. (N. S.) 314, 112 Am. St. Rep. 628."

We held that "the Legislature has power to classify as it sees fit by imposing a heavy burden on one class of property and no burden at all upon others," provided "all persons and property in the same class are treated alike," and "the tax is imposed equally upon all property of the class to which it belongs." In discussing the subject we said that:

"While a tax upon a particular house or horse or the houses or horses of a particular man or on the sale thereof would obviously invade a constitutional right, still a tax upon all houses, leaving barns and business buildings untaxed, or upon all horses or the sale thereof, leaving sheep and cows untaxed, however unwise, would be within the power of the Legislature. * * * The equal protection of the laws 'only requires the same means and methods to be applied impartially to all the constituents of each class, so that the laws shall operate equally and uniformly upon all persons in similar circumstances.' Kentucky Railroad Tax Cases, 115 U. S. 321, 337, 6 Sup. Ct. 57, 29 L. Ed. 414. Or, in other words, all persons must 'be treated alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed.' Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 293, 18 Sup. Ct. 594, 42 L. Ed. 1037; Hayes v. Missouri, 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578; Barbier v. Connolly, 113 U. S. 27, 32, 5 Sup. Ct. 357, 28 L. Ed. 923. * * * The act now before us does not classify by arranging according to quality, but by arranging according to accident. While it places all corporate shares in a class, still it does not treat all members of the class alike, but without method or order bears heavily upon some and lightly upon others, which, in effect, is a further classification. * * * While the Legislature has wide latitude in classification, its power in that regard is not without limitation, for the classi-

fication must have some basis, reasonable or unreasonable, other than mere accident, whim, or caprice. There must be some support of taste, policy, difference of situation or the like, some reason for it, even if it is a poor one. While the state can tax some occupations and omit others, can it tax only such members of a calling as have blue eyes or black hair? We have said that it could tax horses and leave sheep untaxed, but it does not follow that it could tax white horses and omit all others, or tax the sale of certificates printed on white paper and not those on yellow or brown. While one class may be made of horses and another of sheep, or even a class made of race horses, owing to the use made of them, without a shock to common sense, a classification limited to white horses would be so arbitrary as to amount to tyranny because there would be no semblance of reason for it."

It does not seem necessary to add anything to these felicitous illustrations of improper classification. A classification by origin applied to a vast variety of goods seems to be more unreasonable than any enumerated by the Court of Appeals. So that, if we should hold that this statute does not violate the interstate commerce clause of the federal Constitution, and does not, under the guise of a licensing act, practically prohibit the buying and selling within this state of goods, wares, and merchandise produced in another state, and look at it solely as a revenue act, we are forced to the conclusion that it is an unconstitutional exercise of legislative power, and hence invalid.

It follows that the order appealed from should be affirmed. All concur.