Daniel J. McAvoy, J.
The relator, David Bunis, has been arrested and detained on a charge of violating section 436-d of the Penal Law of the State of New York. He seeks his dis *1098 charge in this habeas corpus proceeding upon the ground that the statute in question is unconstitutional.
This section provides as follows: “Sale of newspapers, magazines, periodicals and other publications from which the title page or cover or other identification marks have been removed or obliterated. Any person who knowingly sells, offers or exposes for sale, (except in bulk as waste paper) any newspaper, magazine, periodical or other publication, except a rare book, manuscript or educational text, from which the cover or title page has been removed, or from which the title, trade name, trade mark or other identification mark has been removed or obliterated, is guilty of a misdemeanor.” (L. 1956, ch. 886, eff. July 1, 1956.)
The information upon which the warrant of arrest was issued alleges that on October 7, 1957, the relator did violate said section — “ in that he did knowingly sell, offer and expose for sale at 158 E. State Street, Ithaca, N. Y., periodicals and books from which the covering or title pages or identification marks had been removed ’ ’.
It is the undoubted right of the Legislature, as part of the police powers of the State, to say that certain acts shall constitute a crime and fix the punishment therefor. However, as Christopher J. IIeffeknan, Official Referee, well stated in the case of Defiance Milk Prods. Co. v. Du Mond (205 Misc. 813, 815, affd. 285 App. Div. 337, affd. 309 N. Y. 537) — “In order to sustain legislation under the police power the courts must be able to say that its operation tends in some degree to prevent some offense or evil or to preserve public health, morals, safety and welfare, and if a statute discloses no such purpose, has no real or substantial relation to these objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so hold and strike down the statute.”
The question here is whether or not this statute has any real or substantial relation to the protection of the public in the respects mentioned as constituting, a proper exercise of the police' powers.
We are told in the briefs submitted on behalf of the respondent that an objective of the statute is to prevent sale by unauthorized persons, of magazines and periodicals which may remain unsold in the hands of retailers, and which are supposed to be returned through the wholesalers to the distributors for a proper credit or rebate.
In other words, all magazines, periodicals, etc., are sold by the publisher to distributors, wholesalers and retailers thereof, *1099 on a return basis for their unsold copies. Under his franchise with his distributor or publisher, the wholesaler must remove from the retailer’s stands all unsold copies of the old or so-called “ off sale ” issue; but with their covers intact. The retailers are then paid by the wholesalers for the intact return copies, the same price the retailers paid therefor. Then, at his warehouse the wholesaler under his written franchise, has the duty of removing the cover pages or the name parts thereof from all such returns. Title to all these coverless returns then revests in the distributor. The wholesaler has the duty to the distributor of rendering these coverless returns unsalable and destroying them as waste. After performing this duty, the wholesaler is paid for his unsold copies when he returns the covers or tops thereof as proof of the amount of publications unsold.
It seems that these unsold publications have been falling into the hands of unauthorized persons, instead of being destroyed or sold in bulk as waste paper, and are being offered by them for sale to the public. That the purpose of the statute was to prevent this is borne out by the statement of Assemblyman Steingut, who apparently sponsored the bill, and which statement appears in the Legislative Annual for the year 1956 at page 25, as follows:
‘ ‘ Periodicals, sale with cover removed. A. I. 3346, Pr. 4265, Steingut. Oh. 886.
“ Penal Law, § 436-d, new. The purpose of this legislation is to prevent the resale of periodicals once they have been recalled by the publisher. It is intended to remove from circulation objectionable material.
‘ ‘ I have been advised that the practice of the industry has been that when publications are recalled the manner in which dealers get credit for the periodicals is by returning the cover of the publication. This cover, in most instances, contains the identification mark leaving no other identity on the periodical. After the cover has been returned to the publisher the dealer is given credit, and in a great many instances the coverless periodical is resold.
‘ ‘ A similar bill was introduced at the 1955 Session of the Legislature and was vetoed by the Governor. The bill now before the Governor was amended, and it is my belief that this amendment satisfies the objection of last year.”
It would appear, therefore, that the real purpose of the legislation was to protect the trade in an economic sense from such resales, rather than to protect the public from the standpoint of health, morals, safety and welfare.
*1100 It has been repeatedly held that similar legislation, which was enacted for the special benefit or protection of a class rather than the public, is unconstitutional as an invalid exercise of the police power. (See People v. Gillson, 109 N. Y. 389; Good Humor Corp. v. City of New York, 264 App. Div. 620, 621, 622, affd. 290 N. Y. 312.)
Here the statute under discussion prohibits the sale or offering for sale of newspapers, magazines, periodicals or other publications from which the cover or title page has been removed, or from which the title, trade name, trade-mark or other identification mark has been removed or obliterated. This language does not have reference to the obliteration or removal of the name of the owner, publisher or author of the publication but rather to the title or identity of the publication itself — which might or might not reveal the name of the owner or publisher. In fact, while the covers are partially torn off the magazines which were the subject of sale in the present case, they contain a page setting forth the names of the editors and publishers thereof.
It is important to the public welfare that such information as to their identity be furnished in order that the guilty parties might be held responsible for the dissemination of any printed matter of a libelous, defamatory or obscene nature and the like.
Section 330 of the General Business Law is a statute designed to prevent such evil and hence, a proper exercise of the police powers. The statute in question cannot be held to have any relationship to the prevention of fraud upon the public. Presumably, if one buys a magazine or periodical, etc., which has been partially mutilated, he is aware of the real nature and condition of the article purchased. Neither has the statute the remotest relationship to the protection of the public health or welfare.
Thus, it appearing that the statute had for its real purpose the protection of a particular class rather than the general public, it must be held unconstitutional as an invalid exercise of the police powers.
The writ is therefore sustained and the relator discharged.