Matthew J. Jasen, J.
This is an appeal from a decision rendered by the City Court of Buffalo (Amsr T. Mikoll, J.), dismissing an information against the defendant-respondent charging him with a violation of section 436-d of the Penal Law, on the grounds that the statute was unconstitutional as an invalid exercise of the State’s police power and on the principle of *562 stare decisis. (People ex rel. Bunis v. Simmers, 13 Misc 2d 1097 [1958].)
The undisputed facts reveal that the respondent herein was arrested and charged in an informtion filed that he “ did knowingly sell, offer or expose for sale magazines from which the Cover or title page had been removed or from which the title, trade name, trade mark or other identification had been removed, in that defendant did at 23 East Mohawk at Bunis Book Shop, owned by defendant, offer or expose for sale approximately BOO magazines which were on a display table in said book shop, and either part or all of the covers of said magazines had been removed, all in violation of Section 436-d of the Penai Law.” At the time of his trial and before any proof was taken, the respondent moved against the information on the grounds that section 436-d of the Penal Law was unconstitutional as an invalid exercise of the State’s police power. From the decision of the City Court of Buffalo dismissing the information, the appellant appeals.
The particular statute in question reads as follows:
“ § 436-d. Sale of newspapers, magazines, periodicals and other phblications from which the title page- or cover or other identification marks have been removed or obliterated
1 ‘ Any person who knowingly sells, offers or exposes for sale, (except in bulk as waste paper) any newspaper, magazine, periodical or other publication, except a rare book, manuscript or educational text, from which the cover or title page has been removed, or from which the title, trade name, trade mark or other identification mark has been removed Or obliterated, is guilty of a misdemeanor.”
The memorandum of Assemblyman Stanley Steingut, the author of said bill, as reported in the 1956 New York State Legislative Annual at page 25, reads as follows:
‘1 Penal Law, § 436-d, new. The purpose of this legislation is to prevent the resale of periodicals once they have been recalled by the publisher. It is intended to remove from circulation objectionable material.
‘11 have been advised that the practice of the industry has been that when publications are recalled the manner in which the dealers get credit for the periodicals is by returning the cover of the publications. This cover, in most instances, contains the identification mark leaving no other identity on the periodical. After the cover has been returned to the publisher the dealer is given credit, and in a great many instances, the coverless periodical is resold.
*563 “ A similar bill was introduced at the 1955 Session of the Legislature and was vetoed by the Governor. The bill now before the Governor was amended, and it is my belief that this amendment satisfies the objections of last year.”
An examination of the Legislative Annual for 1955 fails to disclose any information as to the reason why the prior bill was vetoed by the Governor.
Other pertinent sections read as follows:
The New York State Constitution (art. I, § 6) reads: “ No person shall be deprived of life, liberty or property without due process of law.”
The New York State Constitution (art. I, § 8) states: ‘ ‘ Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press.”
The appellant stated to the court that in the magazine trade, the publishers customarily sell each issue of their periodicals to national distributors, who, in turn, allocate same to regional wholesalers, who, again in turn, allocate same to their own established retailers in their particular territory. The sales are all made on a return basis; that is, each distributor, at his level, returns any unsold copies to the party he received them from, receiving full credit for those returned. However, to avoid unnecessary transportation and collection costs, when the unsold copies are returned to the wholesaler by the retailer, the wholesaler instead of returning the entire magazine to his distributor, must, and does, evidence his returns by removing the title tops of the covers, or the full covers of such periodicals and sends these to the national distributor.
Under this business practice, the wholesaler is then under a duty to render such magazines unreadable and to destroy them as waste, inasmuch as they have become the property of his distributor through the credit given the wholesaler, who in turn, has a similar arrangement with the ultimate owner, the publisher. Thus, all such periodicals cannot be lawfully reoffered for sale to the public.
The appellant maintains that a tremendous, lucrative and illicit business practice of dealing with these periodicals is flourishing. They claim that instead of being destroyed, some unscrupulous wastepaper houses to whom the wholesaler delivered'-.the cover-removed or partially coverless magazines solely for destruction, furtively and illegally and fraudulently act as sourcesXfor the illegal delivery and sale of these coverless magazines, directly or indirectly, to the retailers of second-hand *564 magazines similar to the one operated by the respondent. The only title such sources can give to the second-hand dealer is one tainted with larceny. Likewise, the second-hand dealer cannot pass on to the unsuspecting public any title which he himself does not possess.
The District Attorney directs the court’s attention to the fact that the fraudulent nature of the business of selling coverless magazines was judicially recognized more than 20 years ago in Butterick Pub. Co. v. Federal Trade Comm. (85 F. 2d 522). See, also, Yachting Pub. Corp. v. Friedman (15 Misc 2d 810).
Its recent fraudulent recurrence on a huge scale, the appellant argues, was- just one of the reasons why the present statute in question was enacted, and that this statutory regulation is a valid exercise of the police powers vested in our Legislature.
The respondent contends that the section involved herein was enacted for the purpose of protecting a special trade interest rather than to protect the public’s health, morals, safety and welfare and, therefore, is unconstitutional as an invalid exercise of police powers.
The respondent in his brief cites a number of cases such as Defiance Milk Prods. Co. v. Du Mond (205 Misc. 813, affd. 285 App. Div. 337, affd. 309 N. Y. 537); Hauser v. North Br. & Mercantile Ins. Co. (206 N. Y. 455); People ex rel. Duryea v. Wilbur (198 N. Y. 1); People ex rel. Phillips v. Raynes (136 App. Div. 417, affd. 198 N. Y. 539); People v. Ringe (197 N. Y. 143); Fisher Co. v. Woods (187 N. Y. 90) and People v. Gillson (109 N. Y. 389) as examples where similar statutes were declared to be unconstitutional.
This court agrees with the aforesaid decisions but finds that in each of these cases, the specific statute there completely prohibited or destructively regulated an otherwise lawful business. In the Defiance Milk Prods. Co. v. Du Mond case (supra) there was an absolute prohibition of the sale of evaporated skim milk and the court held that since there was no showing of a reasonable basis for an absolute ban against evaporated skim milk, the statute was unconstitutional.
In the case of People v. Gillson (supra) the court declared that the statute prohibiting the giving away of any article as a premium upon the purchase of any other article for sale ás unconstitutional, inasmuch as there was nothing intrinsically wrong with such an operation and no apparent evil was in, fact being corrected. The court was further of the opinion that the statute discriminated economically against a lawful occupation.
This is not the case here. An examination of the statute in question indicates that it does not prohibit or prevent the *565 respondent from dealing in second-hand material, nor does it prevent him from selling any second-hand material which has in some way been damaged, except in the event that its cover or title page has been destroyed. Furthermore, the statute specifically exempts mutilated rare books, manuscripts or educational texts.
This court is of the opinion that section 436-d does not completely prohibit or destructively regulate the lawful business of a second-hand book dealer. The section does, however, set forth reasonable regulation thereof in order to prevent a fraud on the public and to facilitate the operation of a reasonable business practice.
The Legislature has seen fit to enact this section based on what they believed to be an actual and manifest evil. Questions as to the wisdom, need or appropriateness of the law are for the Legislature and not for the court. Once the court finds necessary factual support for its provisions which justify the law, the court’s power of inquiry as to its constitutionality on the grounds that it is an invalid exercise of the State’s police power, ends. (United States v. Carolene Prods. Co., 304 U. S. 144,154.)
This statute was intended not only to protect the publishers of the periodicals, who in fact became the owners of the returns through the operation of the credit system, but also to protect the public from unscrupulous sellers of such merchandise, who had no title to it. This is simply an effort on the part of the Legislature to remedy and combat an evil which it has found to factually exist in the State.
The instant situation is comparable to the many examples of statutory and judicial regulation where reasonable regulations were enacted to prevent an actual or manifest evil. (See People v. Rueffer, 279 N. Y. 389; People v. Luhrs, 127 App. Div. 634, affd. 195 N. Y. 377; People v. Cannon, 63 Hun 306, affd. 139 N. Y. 32; People v. Adduci, 176 Misc. 697; Merchants Exch. v. Missouri, 284 U. S. 365; Penal Law, § 436-a, subds. 2, 4; § 2354, subd. 6; General Business Law, §§ 62, 63, 270, 384, 391; Agriculture and Markets Law, § 70; and others.)
The respondent also argues that the sale of magazines falls directly within the protection of the First Amendment of the United States Constitution and section 8 of article I of the New York State Constitution guaranteeing freedom of the press, and that any legislative restriction of these rights is presumptively unconstitutional. In support of his position, he cites Schware v. Board of Bar Examiners (353 U. S. 232); Konigsberg v. State Bar (353 U. S. 252); Schware v. Board of Educ. (350 U. S. 551); Near v. Minnesota (283 U. S. 697); Grosjean v. American *566 Press Co. (297 U. S. 233); Smith v. California (361 U. S. 147); Roth v. United States (354 U. S. 476) and United States v. Carolene Prods. Co. (supra).
The court agrees with the principle involved therein, but finds that the regulations contained in section 436-d of the Penal Law do not restrict the publishing, distribution or sale of any magazine, but instead attempt to reasonably restrict the sale of published and distributed magazines without covers in order to combat an evil which the Legislature has found to exist.
This court disagrees with the conclusion reached by the Hon. Daniel J. McAvoy as reported in the ease of People ex rel. Bunis v. Simmers (13 Misc 2d 1097) where he decided under the same set of facts that the statute was unconstitutional.
Although the court there did state on page 1098 that “ ‘In order to sustain legislation under the police power the courts must be able to say that its operation tends in some degree to prevent some offense or evil ’ it did not find that the resale of coverless magazines by dealers having no lawful title to same is in fact “ some offense or evil.”
This court is of the opinion that although this statute does tend to protect publishers of periodicals, it also protects the public from unscrupulous sellers of coverless magazines to which they have no lawful title. This legislation is simply a reasonable effort to remedy and combat an evil that has been found by our Legislature to exist in the State.
Accordingly, the decision of the City Court of Buffalo is reversed, and the information reinstated.